IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Jay H. Marx, *et al.* : | |
| : | Case No. C-1-02-050 |
| Plaintiffs : | |
| : | District Judge Susan J. Dlott |
| v. : | |
| : | ORDER GRANTING IN PART AND |
| Lt. Colonel Richard Janke, *et al.* : | DENYING IN PART MOTION TO |
| : | DISMISS THE FOURTH AMENDED |
| Defendants : | COMPLAINT |
| : | |

This matter comes before the Court on Defendants' Motion to Dismiss the Fourth Amended Complaint on the Grounds of Failure to State a Claim Upon Which Relief Can Be Granted and Qualified Immunity and Memorandum in Support (doc. #20). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss.

**I.      FACTUAL BACKGROUND**

Plaintiffs Jay H. Marx, Molly Lyons, David Mitchell, Carwil James, Nancy Nguyen, Catherine Austin, Ora Wise and R.J. Maccani bring claims asserting federal constitutional violations and state common law torts based on their arrests by the Cincinnati Police Department ("CPD") on June 2, 2001. Plaintiffs were arrested in the Mt. Adams neighborhood of Cincinnati, Ohio while participating in a protest of police practices, including the alleged selective enforcement of a city-wide curfew enacted in April 2001 following the shooting death of Timothy Thomas by a CPD officer. Defendants are the City of Cincinnati ("the City"), and Ltc. Richard Janke, Officer Spencer Henderson and John Does #1-20, all officers with the CPD.

As required on a motion to dismiss, the Court takes as true all the allegations contained in

1

the Plaintiffs' Fourth Amended Complaint (doc. #17). On June 2, 2001, Plaintiffs gathered at Seasongood Pavilion in Mt. Adams in order to engage in protest activities and walked from there to Louden Street toward Hatch Street. Ltc. Janke directed police cruisers to move ahead of the protesters; the positioning of the cruisers blocked vehicular traffic from entering Mt. Adams from Lounden Street. The police officers stopped the 80-100 protestors at the intersections of Louden, Hatch and St. Gregory Streets. Plaintiffs asked the officers what they needed to do to avoid arrest and attempted to obey police orders to step off the street and onto the crowded sidewalk. Plaintiffs did not destroy property or engage in illegal acts at any time. Despite their efforts to cooperate with the police, the police arrested Plaintiffs using excessive force. CPD officers sprayed several plaintiffs with mace after they had already been restrained.

Plaintiffs allege that the police made the arrests and used excessive force to retaliate against them for criticizing police conduct. Both before and after the protest began, Plaintiffs engaged in verbal confrontations with Ltc. Janke in the presence of other police officers. Specifically, Plaintiffs accused CPD officers of being criminals and murderers who shot and killed unarmed citizens. Additional allegations directed towards only Ltc. Janke and Officer Henderson are discussed in more detail below where relevant.

Plaintiffs bring nine causes of action against Defendants:

(1) 42 U.S.C. § 1983 claim for use of excessive force in violation of the Fourth and Fourteenth Amendments;
(2) False arrest;
(3) Malicious prosecution;
(4) False imprisonment;
(5) Negligent infliction of emotional distress;
(6) 42 U.S.C. § 1983 claim for violations of the First Amendment and Fourteenth Amendment;
(7) Battery;
(8) Defamation (Officer Henderson only); and

  (9) Abuse of process.

Plaintiffs bring each cause of action against all Defendants, except for the defamation claim against Officer Henderson only.

  Defendants now move to dismiss the Fourth Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the individual defendants have raised the defense of qualified immunity regarding the § 1983 claims.

## II. STANDARD FOR DISMISSAL UNDER RULE 12(B)(6)

  Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In assessing the sufficiency of a complaint, courts must follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). This accords with the purpose of Rule 12(b)(6), which the Sixth Circuit has explained "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." <u>Mayer v. Mylod</u>, 988 F.2d 635, 638 (6th Cir. 1993). Therefore, "[o]n a Fed.R.Civ.P. 12(b)(6) motion, all of the allegations contained in the plaintiff's complaint are accepted as true, and the complaint is construed liberally in favor of the party opposing the motion." <u>Miller v. Currie</u>, 50 F.3d 373, 377 (6th Cir. 1995). At the same time, however, the Court "need not accept as true legal conclusions or unwarranted factual inferences." <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987).

  Defendants attached three videotapes showing scenes from the Mt. Adams protest as Exhibit 1 to their Motion to Dismiss. Defendants contend that the Court should not accept the

allegations in the Fourth Amended Complaint as true because the videotapes establish conclusively that Plaintiffs engaged in unlawful activity and resisted arrest during the protest. Courts can consider "public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies" on a Rule 12(b)(6) motion. Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999) abrogated in part on other grounds Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). Defendants appear to imply that the videotapes are matters of which the Court can take judicial notice.

      A court may take judicial notice of adjudicative facts that are "not subject to reasonable dispute in that [they are] . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. This Court can take judicial notice that Plaintiffs previously stipulated that the videotapes were admissible evidence during their criminal proceedings in Municipal Court, Hamilton County, Ohio, State of Ohio v. Mitchell, et al.[1] The Court will not, however, take judicial notice of the images captured in the videotapes for the purpose of substantively refuting the allegations in the Fourth Amended Complaint. "[C]ourts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed." See General Elect. Cap. Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1081 (7th Cir. 1997).

      If the Court were to consider the videotapes, it would have to convert the Motion to Dismiss to a motion for summary judgment. See Fed. R. Civ. P. 12(b). In Buttons v. National Broadcasting Co., 858 F. Supp. 1025, 1028 (C.D. Cal. 1994), the court converted a motion to

---

[1] The consolidated cases in the Hamilton County Municipal Court were case numbers CRB/18253 A&B, CRB/18252, CRB/18266 A&B, CRB/18261, CRB18260, and CRB 18259.

dismiss to a Rule 56 motion when it considered as evidence a videotape of the television program that was the basis for the plaintiff's defamation claim. As the videotapes here contain an incomplete recording of the protest events,[2] the Court declines to exercise its discretion to consider the videotapes and will not convert the Motion to Dismiss into a motion for summary judgment. See Clarkco Landfill Co. v. Clark County Solid Waste Management Dist., 110 F. Supp. 2d 627, 633 (S.D. Ohio 1999).

### III.   ANALYSIS

#### A.   Plaintiffs' Federal Civil Rights Claims

Plaintiffs allege that Defendants violated their rights under the First, Fourth, and Fourteenth Amendments to the Constitution, and they bring suit pursuant to 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes to
> be subjected, any citizen of the United States . . . to the deprivation
> of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege that: (1) the conduct complained of was committed by a person acting under the color of state law; and (2) that conduct deprived a person of rights, privileges, or immunities secured by federal law. See Daughenbaugh v. City of Tiffin, 150 F.3d 594, 597 (6th Cir. 1998).

As to each of Plaintiffs' constitutional claims, the individual defendants have raised the

---

[2] The Court is unable to identify all of the named parties in the critical scenes at the intersection of Hatch and St. Gregory Streets in Mt. Adams. The camera work is jumpy and difficult to follow, conversations among CPD officers and between the officers and the protestors are inaudible at times, and the views of the actual arrests are obstructed. The Court does not consider the videotapes to be dispositive evidence on any issue now before it and has not relied upon the videotapes in rendering this opinion.

defense of qualified immunity. The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine if qualified immunity attaches, the Court follows the sequential analysis set forth in Saucier v. Katz, 533 U.S. 194 (2001). See Greene v. Barber, 310 F.3d 889, 894 (6th Cir. 2002). First, the Court examines whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the government official's conduct violated a constitutional right. See Saucier, 533 U.S. at 201. If the alleged facts set forth a claim for a violation of constitutional rights, the Court next inquires whether the specific rights violated were clearly established. See Saucier, 533 U.S. at 201. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. It must be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)). A police officer may be entitled to qualified immunity despite violating a plaintiff's rights, if he acted under a mistaken understanding as to what the law allowed and his mistake was reasonable. See id. at 205.

    1.    **First Amendment Claims**

Plaintiffs allege that CPD officers arrested them with excessive force because Plaintiffs were protesting against alleged police misconduct. To state a claim for unlawful retaliation in violation of the First Amendment, a plaintiff must establish three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two--that is, the adverse action was motivated at least in part by

the plaintiff's protected conduct.

Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  Plaintiffs here have pleaded sufficient facts to establish the first and second elements.  Plaintiffs' right to engage in lawful protest on public streets cannot be questioned.  As the Sixth Circuit recently stated, "Over sixty years ago, the Supreme Court declared that use of the streets for assembly and communication is a right held by U.S. citizens pursuant to the First Amendment."  Dean v. Byerley, 354 F.3d 540, 549 (6th Cir. 2004) (citing Hague v. Committee for Indust. Org., 307 U.S. 496, 515-16 (1939)).  Likewise, the right to criticize public officials has been "central to the meaning of the First Amendment" since "the day the ink dried on the Bill of Rights."  McCurdy v. Montgomery Cty., Ohio, 240 F.3d 512, 520 (6th Cir. 2001).  Few actions could so deter a person of reasonable firmness from continuing to exercise his or her free speech rights as being arrested.  Cf. Cohen v. Smith, No. 01-1666, 58 Fed. Appx. 139, 2003 WL 343235, *5 (6th Cir. Feb. 12, 2003) (Guy, J., concurring) ("[A]rresting or detaining an individual in retaliation for criticizing the police, even through the use of crude language, violates the First Amendment.")

      Turning to the causal connection element, because Defendants' motives are at issue and Defendants have put forward a qualified immunity defense, the Court may insist that Plaintiffs "put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal."  See Goad v. Mitchell, 297 F.3d 497, 504 (6th Cir. 2002) (quoting Crawford-El v. Britton, 523 U.S. 574, 598 (1998)).  Allegations that provide circumstantial evidence of improper intent can suffice as specific, nonconclusory allegations.  See id. at 505.  Plaintiffs state multiple allegations that, taken together, provide circumstantial evidence of improper intent.

Plaintiffs allege that immediately prior to the Mt. Adams protest, Ltc. Janke got into a "heated discussion" with one of the plaintiffs in the presence of his subordinates. Ltc. Janke allegedly told Plaintiff Mitchell that he would "whack" Mitchell. Plaintiffs referred to CPD officers as criminals and murderers in the presence of Ltc. Janke and other officers. Plaintiffs also allege that they obeyed police orders to move onto the sidewalk, but questioned the lawfulness of their actions as they did so. They allege that Plaintiff Marx was arrested as he was leaving the protest after asking why another protester had been arrested. Finally, they allege that Officer Henderson intentionally made false statements in the criminal complaints filed against the Plaintiffs with Ltc. Janke's consent and authority. The Court finds that these allegations are sufficient to meet Plaintiffs' burden of putting forward specific, nonconclusory allegations that establish improper motive for purposes of the First Amendment retaliation claims. See id. at 504-05.

Because Plaintiffs have met their burden of pleading sufficient facts to state a claim for violation of their First Amendment rights, the Court next must determine whether the specific rights alleged to have been violated were clearly established in the specific context of the situation that the individual defendants confronted. "There can be no doubt that the freedom to express disagreement with state action, without fear of reprisal based on the expression, is unequivocally among the protections provided by the First Amendment." McCurdy, 240 F.3d at 520. The Court holds that the police officers violated Plaintiffs' clearly established rights, if, as alleged, they arrested Plaintiffs without probable cause because Plaintiffs had accused the police of a pattern of misconduct. See Green, 310 F.3d at 897-98 (denying qualified immunity at the summary judgment stage where a reasonable jury could conclude that the officer arrested the

plaintiff without probable cause and in retaliation for the plaintiff's insult of a police officer). Therefore, Defendants' Motion to Dismiss on the grounds of qualified immunity is **DENIED** as to Plaintiffs' claims for violations of their First Amendment rights.

### 2. Fourth Amendment Claims

Plaintiffs also allege that Defendants violated their Fourth Amendment rights. The Fourth Amendment to the Constitution protects the rights of people to be secure in their persons from unreasonable seizures. Arrests made without probable cause constitute unreasonable seizures in violation of the Fourth Amendment. See Ingram v. City of Columbus, 185 F.3d 579, 595 (6th Cir. 1999). Defendants first argue that the videotapes demonstrate conclusively that CPD officers had probable cause to arrest Plaintiffs and to use reasonable force when the Plaintiffs resisted arrest. This argument fails because the Court will not consider the videotapes for purposes of this Motion to Dismiss. In the Fourth Amended Complaint, Plaintiffs allege that they did not engage in the destruction of property or commit illegal acts. Plaintiffs allege that the police cruisers, not the protestors, blocked vehicular traffic. Finally, they allege that they complied with police orders to move from the street and to the sidewalk. These allegations, if true, do not provide probable cause to arrest Plaintiffs.

The Court rejects Defendants' implied argument that the Mt. Adams protesters, including Plaintiffs, engaged in illegal activity because they gathered in Mt. Adams without first obtaining a parade permit from the City. Defendants do not cite to a specific provision in the Cincinnati Municipal Code or other statutory code that Plaintiffs violated. In fact, the Municipal Code requires participants in a march or parade to obtain a permit only when they will not strictly comply with laws and regulations relating to vehicular and pedestrian traffic. See Cincinnati

Muni. Code §§ 510-2, 510-3.  Otherwise, protesters are required not to obstruct or unreasonably interfere with the rights of the public to use the streets and sidewalks and to obey lawful police orders concerning the flow of traffic.  See id. §§ 502-9, 510-2, 510-7 through 510-10.  Plaintiffs' activities as described in the Fourth Amendment Complaint were not unlawful under these standards and did not furnish probable cause for their arrest.

Turning to the use of excessive force allegations, these allegations are analyzed under the Fourth Amendment and its objective "reasonableness" standard.  See Graham v. Connor, 490 U.S. 386, 395 (1989).  The relevant factors for determining whether the force used in a particular case was reasonable include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id. at 396.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id. (quoting Terry v. Ohio, 392 U.S. 1, 20-22 (1968)).

Preliminarily, Plaintiffs have not alleged that CPD officers used excessive force against Plaintiffs Maccani or Marx.  Also, Plaintiffs have not pleaded facts alleging that Officer Henderson personally used excessive force.  They have alleged only that Henderson signed false statements in criminal complaints against Plaintiffs and that he swore false affidavits with the Hamilton County, Ohio Court of Common Pleas.  Accordingly, Plaintiffs' Fourth Amendment claims are **DISMISSED** to the extent that they assert that Plaintiffs Maccani or Marx were subjected to excessive force or that Officer Henderson used excessive force.

Plaintiffs allege that other, unidentified police officers, at the direction of Ltc. Janke, used excessive force against Plaintiffs Lyons, Mitchell, James, Austin, and Wise.  Plaintiffs'

allegations, taken in the light most favorable to Plaintiffs, would establish that Lyons, Mitchell, James, Austin, and Wise were not engaged in illegal activity, that they did not pose an immediate threat of harm to the officers or others, and that they did not resist arrest or attempt to flee. See id. (setting out excessive force factors). Plaintiffs allege that CPD officers nonetheless used such violent tactics as throwing Plaintiffs into the street, pulling hair, slamming them onto the pavement, and spraying them with mace after they had been restrained. These allegations, if true, constitute violations of Plaintiffs' Fourth Amendment rights to be free from the use of excessive force, rights that were clearly established in the context of this situation. See, e.g., Ingram, 185 F.3d at 597 (police used excessive force by handcuffing and violently shaking plaintiff if plaintiff had committed no crime and had not obstructed police in any way); Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir. 1998) (where plaintiffs were suspected of no serious crime, posed no threat to anyone, and did not resist arrest, defendant officers "were not justified in using *any* force") (emphasis in original); Adams v. Metiva, 31 F.3d 375, 387 (6th Cir. 1994) ("If the jury determines that Metiva arrested plaintiff without probable cause and gratuitously maced a helpless and incapacitated person, then as a legal matter no reasonable officer would believe that such conduct would not violate plaintiff's constitutional rights.").

These allegations do support a claim against Ltc. Janke for use of excessive force under a supervisory liability theory. Supervisory liability would attach if Ltc. Janke actively encouraged or condoned the unconstitutional behavior. See Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir. 1999). Supervisory liability requires more than a showing of mere negligence. See id. Plaintiffs allege that Ltc. Janke ordered the police officers to arrest Plaintiffs because they had criticized the police, not because they had violated any traffic laws. Plaintiffs further allege that Ltc. Janke

ordered the officers to use mace on the protestors and then refused to order the officers to allow the plaintiffs who had been maced to rinse off their faces. If proven, these allegations would establish that Ltc. Janke is liable as a supervisor. Therefore, Defendants' Motion to Dismiss on the grounds of qualified immunity is **DENIED** as to Plaintiffs' claims against Ltc. Janke for violations of their Fourth Amendment rights. Whether the City of Cincinnati can be held liable for the allegedly unconstitutional conduct of its officers is discussed separately in Section III(A)(4) below.

### 3. Fourteenth Amendment Claims

Defendants contend that Plaintiffs' claims alleging the use of excessive force in violation of the Fourteenth Amendment should be dismissed because excessive force claims arise only under the Fourth Amendment in the context of arrests. Defendants are correct. "Claims of excessive force in the context of arrests or investigatory stops should be analyzed under the Fourth Amendment's 'objective reasonableness standard,' not under substantive due process principles." Saucier, 533 U.S. at 204; see also Scott v. Clay Cty., Tenn., 205 F.3d 867, 875-76 (6th Cir. 2000) (holding the same, but also noting that non-targeted innocent third parties collaterally injured by the use of force can bring a Fourteenth Amendment claim if the defendant's actions "shock the conscience"). Therefore, Plaintiffs' First and Sixth Causes of Action are **DISMISSED** to the extent that they allege excessive force in violation of the substantive due process protections of the Fourteenth Amendment.

### 4. Claims Against the City of Cincinnati

The Court next examines whether Plaintiffs have stated a claim against the City for

violations of their First Amendment and Fourth Amendment rights. A municipality cannot be held liable on a § 1983 claim under a respondeat superior theory, i.e., simply because it employs a tortfeasor. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). A municipality may be liable under § 1983 if it followed an official policy or custom and that policy or custom was the "moving force" behind the municipal employee's constitutional violation. Id. at 690-91, 694. A municipal custom can be proved by establishing "the knowledge of policymaking officials and their acquiescence in the established practice." Memphis, TN Area Local v. City of Memphis, 361 F.3d 898, 902 (6th Cir. 2004).

Where, as here, the theory of liability against a municipality is for a failure to train its police officers, § 1983 liability attaches only "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1988). Deliberate indifference can be proven by establishing (1) the foreseeable consequences that exist by the lack of instruction, or (2) the city failed to act or respond to repeated complaints of constitutional violations by its officers. See id. at 389-90. The failure to discipline or train must be evidenced by a showing of "widespread abuse that has been ignored by the City." Berry v. City of Detroit, 25 F.3d 1342, 1354 (6th Cir. 1994).

Defendants argue that the Fourth Amended Complaint fails to state a claim against the City because it makes only bare allegations that the City followed an unconstitutional policy or knowingly acquiesced in prior misconduct. The Supreme Court has explicitly rejected that a heightened pleading standard applies to § 1983 claims against municipalities. See Leatherman v. Tarrant Cty. Narcotics Intel. and Coord. Unit, 507 U.S. 163, 164 (1993). In the Fourth Amended Complaint, Plaintiffs allege, *inter alia*:

- A "continuing pattern of civil rights abuses by the City of Cincinnati police officers" exists "that results from the Defendants [sic] City of Cincinnati deliberate misconduct in establishing a policy and custom that encourages and acquiescence [sic] in First, Fourth, and Fourteenth Amendment violations;"

- The City of Cincinnati was "deliberate[ly] indifferent . . . in failing to adequately train and discipline its police officers;"

- "As a result of the Defendant City's policies, custom, deliberate indifference and deliberate conduct as described above, the Defendant City of Cincinnati is the moving force behind Defendant Janke's actions as well as those of his fellow Defendants and John Doe police officers who implemented Defendant Janke's command;" and

- The Cincinnati Police Department's policies and practices "have permitted the use of excessive and deadly force upon its citizens, as well as the City government['s] tolerance and implicit condemnation [sic] of these continuous attacks on the very individual freedoms and liberties which these Cincinnati Police officers are sworn to uphold."

(Fourth Amended Complaint ¶¶ 14 & 17).[3]

Courts in the Sixth Circuit have held that allegations concerning a municipality's unconstitutional policy or practice less specific than those set forth here satisfied the notice pleading requirement. See e.g., Denton v. Bedinghaus, No. 00-4072, 40 Fed. Appx. 974, 2002 WL 1611472, *3 (6th Cir. July 19, 2002); Games Galore of Ohio, Inc. v. Masminster, 154 F. Supp. 2d 1292, 1299, 1302 (S.D. Ohio 2001); Memphis, TN Area Local, 2004 WL 103000, at *3.[4] Accordingly, Plaintiffs' allegations here that the City had an official policy or custom that

---

[3] The Court has not reviewed or relied upon the exhibits Plaintiffs attached to the memorandum opposing dismissal which purportedly are evidence of the City's unconstitutional policy or practice.

[4] In Denton, the only allegation of a policy or custom was that the challenged practice was a "commonplace occurrence in Hamilton County and [was] *undertaken pursuant to a policy initiated and carried out by Defendants.*" 2002 WL 1611472, *3 (emphasis in the original); see also Memphis, TN Area Local, 361 F.3d at 903 (holding that the allegations that Memphis, through its officers, "engaged in a pattern of police misconduct" and that Memphis knew the

was the moving force behind the alleged violation of Plaintiffs' First and Fourth Amendment rights also are sufficient to withstand a Rule 12(b)(6) motion.[5] The Court **DENIES** the Motion to Dismiss as to Plaintiffs' First and Fourth Amendment claims against the City of Cincinnati.

    **B.**    **State Law Claims**

Defendants move the Court to decline supplemental jurisdiction over Plaintiffs' state law claims. As the Court does not dismiss all of Plaintiffs' federal claims, it retains supplemental jurisdiction over the state law claims.

Alternatively, Defendants move for dismissal of the state law claims on the basis that Plaintiffs unsuccessfully litigated a motion for acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure and cannot re-litigate the existence of probable cause for their arrests or the prima facie cases for the offenses charged. Defendants have not provided the Court with the relevant records from the state criminal court proceedings from which the Court could take

---

actions of its officers were unlawful and unconstitutional, sufficiently stated a § 1983 claim to withstand a motion to dismiss). Likewise, in Games Galore, the only allegation of an unconstitutional policy or custom was that the City of Cincinnati extended a "professional courtesy" to a police officer of another municipality in aiding and abetting the police officer in his acts of unlawful conversion of the plaintiff's property. The court found this to be sufficient for notice pleading and stated that the complaint was "not inadequate for its failure to include factual or evidentiary details best left to the discovery process." 154 F. Supp. 2d at 1302.

[5] The cases cited by the defendants do not require a contrary result. For example, Strauss v. City of Chicago, 760 F.2d 765 (7th Cir. 1985) is no longer good law because it was issued before the Supreme Court held in Leatherman that § 1983 claims against municipalities do not require heightened pleading. See Wolf v. City of Chicago Hghts, 828 F. Supp. 520, 524 (N.D. Ill. 1993). The decisions in Hullett v. Smiedendorf, 52 F. Supp. 2d 817 (W.D. Mich. 1999), and Garner v. Memphis Police Dept., 8 F.3d 358 (6th Cir. 1993), examined the evidence offered to establish a policy or custom at the summary judgment stage, while Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994) concerned the evidence that must be established to prove a policy or custom at trial. The burdens of proof at these litigation stages are much greater, and appropriately so, than what is required at the notice pleading stage.

judicial notice.  The Court, therefore, does not dismiss the state law claims on this basis at this time.

Finally, Defendants argue that they are immune from the state law claims pursuant to Ohio Revised Code chapter 2744.  Chapter 2744 does not provide absolute immunity from all claims.  In violation of the Local Rules, Defendants have not provided any factual or legal grounds for their assertion that chapter 2744 bars Plaintiffs' state law claims.  See S.D. Ohio Civ. R. 7.2(a)(1) ("All Motions . . . shall be accompanied by a memorandum in support thereof which shall be a brief statement of the grounds, with citation of authorities relied upon.").  The Court, accordingly, **DENIES** the Motion to Dismiss as to Plaintiffs' state law claims.

### C. John Doe Defendants Will Not Be Dismissed

Finally, Defendants assert for the first time in their reply brief that the claims against the John Doe police officers should be dismissed for failure of service.  The Court generally will not consider arguments made in a reply brief to which the opposing party has not had the opportunity to respond.  See In re Brown, 342 F.3d 620, 631 n.3 (6th Cir. 2003) (refusing to consider on appeal argument raised for first time in a reply brief); Guzman v. Denny's, Inc., 40 F. Supp. 2d 930, 937 (S.D. Ohio 1999) (refusing to consider arguments made for the first time in a reply brief supporting a motion for summary judgment).

The Federal Rules of Civil Procedure, however, call on the Court to act on its own initiative in this instance as follows:

> If service of the summons and complaint is not made within 120 days after the filing of the complaint, *the court, upon motion or on its own initiative after notice to the plaintiff*, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (emphasis added). This Order shall constitute notice to the Plaintiffs that the Court will dismiss the John Doe defendants after 30 days of the date of this Order unless Plaintiffs establish that service has been made or good cause for the failure.

## IV.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss (doc. #20) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' First Cause of Action is **DISMISSED** to the extent that it asserts claims by Plaintiffs Maccani or Marx that they were subjected to the use of excessive force and to the extent it asserts a claim against Officer Henderson for using excessive force; Plaintiffs' First and Sixth Causes of Action are **DISMISSED** to the extent that they allege Plaintiffs' Fourteenth Amendment substantive due process rights were violated by the police officers' use of excessive force. The Motion to Dismiss is **DENIED** as to all other claims.

The Court will dismiss the John Doe defendants after 30 days following the date of this Order unless Plaintiffs establish that service has been made upon them or show good cause for the failure to make service.

IT IS SO ORDERED.

       ___s/Susan J. Dlott_____
       Susan J. Dlott
       United States District Judge